IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA C. FREEMAN,<br><br>    Plaintiff,<br><br>v.<br><br>CALIFORNIA FRANCHISE TAX BOARD,<br><br>    Defendant. | Case No. 18-cv-04501-CRB<br><br>**ORDER AFFIRMING ORDER OF THE BANKRUPTCY COURT** |

    Appellant Maria C. Freeman ("Freeman") appeals a May 2018 summary judgment ruling issued by Bankruptcy Court Judge William J. Lafferty in favor of Appellee California Franchise Tax Board (the "FTB"). Notice of Appeal (dkt. 1) at 1. Judge Lafferty determined that the FTB's refusal to release an Order to Withhold Personal Income Tax (an "Order to Withhold") on Freeman's bank account after she filed for Chapter 13 bankruptcy did not violate the automatic stay provisions of 11 U.S.C. § 362(a). Appellee's ER, Part 1 (dkt. 12) at 100–01. This Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), VACATES the hearing currently set for August 2, 2019, and AFFIRMS the ruling of the Bankruptcy Court.

## I. BACKGROUND

### A. Factual Background

    Maria C. Freeman and her spouse, Timothy D. Freeman, (together, the "Freemans") filed their 2011 tax return with the FTB on April 15, 2012. Appellee's ER, Part 2 (dkt. 12) at 138. In their return, the Freemans declared a taxable income of $33,369.00, and stated

that they owed to the FTB no tax for 2011. Antic-Jezildzic Decl. ¶ 3, Appellee's ER, Part 2 at 137–50. Just over four years later, on June 24, 2016, the FTB mailed the Freemans a Notice of Proposed Assessment related to their 2011 tax filing. Ditlevsen Decl. ¶ 4, Appellee's ER, Part 1 at 56–59. In this notice, the FTB revised the Freemans' taxable income for 2011 from $33,369.00 to $2,037,448.00. Id. The FTB accordingly proposed a tax of $195,153.00, a penalty of $39,030.60, and interest totaling $30,253.39. Id.

The Freemans did not protest the Notice of Proposed Assessment, and so the assessment became final on August 23, 2016. Id.; see Cal. Rev. & Tax. Code § 19041 (explaining that the taxpayer has 60 days to protest the proposed deficiency); Cal. Rev. & Tax. Code § 19042 (determining that if the taxpayer does not protest within 60 days, then the proposed amount becomes final).

On September 19, 2016, nearly one month after the assessment became final, the FTB mailed the Freemans a Notice of State Income Tax Due relating to their taxes and fines for 2011. Antic-Jezildzic Decl. ¶ 5, Appellee's ER, Part 2 at 137–50. The notice informed the Freemans that the interest on their payments was continuing to accrue, and warned them that "failure to contact [the FTB] and resolve [the outstanding] balance could cause [the FTB] to . . . levy [the Freemans'] bank accounts." Id.; Appellee's ER, Part 2 at 142. The FTB stated that the Freemans could "prevent involuntary collection actions" if they either: (1) paid off the tax liability in full; (2) entered into an installment agreement with the FTB; (3) proposed a compromise with the FTB; or (4) proved that financial hardship prevented them from paying their liabilities. Appellee's ER, Part 2 at 142.

In Freeman's first filing with the Bankruptcy Court for the Northern District of California on January 13, 2017, she referenced financial hardship issues, stating that the "FTB's conduct ha[d] caused [her] to experience nervousness, anxiety, and fear of her ability to meet her daily living obligations . . . ." Compl. ¶ 14, Appellant's ER (dkt. 9) at 20. However, Freeman never requested a hardship hearing, which the FTB informed Freeman in both written and oral communications was within her rights. Ditlevsen Decl. ¶ 15, Appellee's ER, Part 1 at 56–59; Cabrera Decl. ¶ 4, Appellee's ER, Part 1 at 61–63.

2

By January 3, 2017, the Freemans' liability for their 2011 taxes had grown to $245,230.25. Antic-Jezildzic Decl. ¶ 6,7, Appellee's ER, Part 2 at 137–50. On that date, the FTB issued an Order to Withhold to the Freemans' bank, BAC Community Bank (the "Bank") in Stockton, California, pursuant to California Revenue and Taxation Code Section 18670(a). Freeman Decl. ¶¶ 2, 7, Ex. 1; Appellant's ER at 32–37. California Revenue and Taxation Code Section 18670(a) empowers the FTB to serve a delinquent taxpayer's bank with an Order to Withhold, so that the bank can directly transmit to the FTB either the amount that the taxpayer owes (the "Amount Due") or the amount of the taxpayer's funds in the bank's possession (the "Available Funds"), whichever is less. See Cal. Rev. & Tax. Code § 18670(a). Section 18670(a) provides:

> The Franchise Tax Board may by notice, served personally or by first-class mail, require any . . . person . . . having in their possession, or under their control, any credits or other personal property or other things of value, belonging to a taxpayer or to an employer or person who has failed to withhold and transmit amounts due pursuant to this article, to withhold, from the credits or other personal property or other things of value, the amount of any tax, interest, or penalties due from the taxpayer . . . and to transmit the amount withheld to the Franchise Tax Board at the times that it may designate. However, in the case of a depository institution . . . amounts due from a taxpayer under this part shall be transmitted to the Franchise Tax Board not less than 10 business days from receipt of the notice.

Cal. Rev. & Tax. Code § 18670(a).

In this case, the Bank received the Order to Withhold on or before January 5, 2017. Appellant's ER at 86–91; Appellee's ER, Parts 1 and 2 at 63, 109, 199, 138, 148–50, 156, 198, 230, 275, 276. At that time, the funds in the Freemans' bank account totaled $96,939.14. Freeman Decl. ¶ 7, Appellee's ER, Part 1 at 32–37. Because Freeman's Available Funds of $96,939.14 were less than the Amount Due of $245,230.25, the Bank was required to transmit the Available Funds to the FTB. Appellant's ER at 33, 37, 122, 127; Appellee's ER, Part 2 at 184, 187. Section 18670(a) required the Bank to complete

3

this transaction in "not less than 10 business days from receipt" of the Order. See Cal. Rev. & Tax. Code § 18670(a).

On January 6, 2017, at least one day after the bank received the Order to Withhold, Maria Freeman filed a voluntary Chapter 13 petition, commencing her bankruptcy case. Appellee's ER, Part 1 at 87. Freeman requested that the FTB revoke the Order to Withhold, and the FTB refused to do so. Goldstein Decl. ¶¶ 4–6, Appellant's ER at 39.

### B. Procedural History

On January 13, 2017, one week after filing for bankruptcy, Freeman filed a Complaint for Violation of Automatic Stay with the U.S. Bankruptcy Court in this district. Compl. ¶ 14, Appellant's ER at 20. In her complaint, Freeman alleged that the FTB had violated the automatic stay by refusing to revoke the Order to Withhold when Freeman filed for bankruptcy. Appellant's ER at 18–22. She requested actual and punitive damages in accordance with 11 U.S.C. § 362(k). She also filed a motion for a temporary restraining order. See Appellee's ER, Part 1 at 11.

The FTB maintained, first in successfully opposing the motion for a temporary restraining order, and later in a cross-motion for summary judgment, that it had not violated the automatic stay. Appellee's ER, Part 1 at 37–46; id. at 68 (Order Denying TRO); id. at 111–31. The core of the FTB's argument was (and is) that, at the moment the Bank received the Order to Withhold, ownership of the Available Funds transferred to the FTB—meaning that the funds were no longer Freeman's property when she filed for bankruptcy, and therefore did not become part of her bankruptcy estate. Id. at 40–42, 124–28. Because the funds were not part of Freeman's bankruptcy estate, the FTB argued, they could not be subject to the automatic stay, and so there was no violation. Id. at 43, 130.

Freeman filed a cross-motion for summary judgment. See generally Appellant's ER at 108–17. Freeman argued that the 10-day processing period provided in Section 18670(a) had not yet lapsed by the time she filed for bankruptcy, and so the Funds remained in her control, even after the Bank received the Order to Withhold. Id. at 113 ("At best, the [Order to Withhold] was an incomplete levy at the time of the bankruptcy

4

filing"); id. ("FTB's OTW (without transmittal of the Funds to the FTB) was incomplete"); id. at 114 ("the FTB possessed only <u>an incomplete demand</u> for payment of the Funds at the time of the bankruptcy filing."). Freeman added that Section 18670 does not explicitly state that property immediately transfers upon the issuance of an Order to Withhold. Id. at 112–15.

In a Joint Stipulation, the parties agreed to the facts. Appellee's ER, Part 2 at 155–78, 203–04. Their litigation focused only on the narrow issue of whether the FTB violated the automatic stay. Id.

Judge Lafferty ruled on the parties' cross-motions for summary judgment on May 23, 2018, holding that the FTB did not violate the automatic stay. See generally Tr. of S.J. Hearing, Appellant's ER (dkt. 9). The Bankruptcy Court held that the Bank's receipt of the Order to Withhold terminated any interest Freeman had in the Available Funds, and immediately transferred ownership of those Funds to the FTB. Id. The Bankruptcy Court also concluded that even if Freeman did have an interest in the Funds, such that they had become part of her estate and subject to the automatic stay, there was no legitimate bankruptcy purpose to activate the automatic stay in the first place. Id. at 152.

Freeman appealed on June 21, 2018. Appellant's ER at 9–14. On July 18, 2018, the case was transferred from the Bankruptcy Appellate Panel to this Court, per 28 U.S.C. § 158. Id. at 17. The parties stipulated to move the hearing in this case from June 21, 2019 to August 2, 2019. Mtn. to Continue Hearing (dkt. 15) at 1.

## II. LEGAL STANDARD

A district court reviews a bankruptcy court's findings of fact for clear error, and its conclusions of law de novo. In re Int'l Fibercom, Inc., 503 F.3d 933, 940 (9th Cir. 2007). Mixed questions of law and fact are reviewed de novo. Hamada v. Far E. Nat'l Bank, 291 F.3d 645, 649 (9th Cir. 2002). Here, the parties have agreed to the facts and have agreed to litigate only the narrow issue of whether the FTB violated the automatic stay. Appellee's ER at 155–78, 203–04. Whether the FTB violated the automatic stay is a question of law, to be reviewed de novo. See In re Perl, 811 F.3d 1120, 1124 (9th Cir.

5

2016) (citing In re Mwangi, 764 F.3d 1168, 1173 (9th Cir. 2014)).

**III. DISCUSSION**

The Court AFFIRMS the Bankruptcy Court's order entering summary judgment in favor of the FTB, for two reasons. First, the Available Funds were not part of Freeman's bankruptcy estate, so no automatic stay violation occurred. Second, even assuming that the Funds were part of Freeman's estate, there was no legitimate bankruptcy purpose to trigger the automatic stay.

**A. The Available Funds Were Not Property of Freeman's Bankruptcy Estate**

The first reason the Court affirms the Bankruptcy Court is that the Available Funds were not part of Freeman's bankruptcy estate, because they were no longer her property when she filed for bankruptcy. The Order to Withhold, received by the Bank on January 5, 2017 at the latest, transferred ownership of the Funds to the FTB the moment the Bank received it, even though the 10-day period provided in Section 18670 had not lapsed. As a result, the Available Funds never became part of the bankruptcy estate that Freeman created on January 6, 2017, and the automatic stay did not apply to them. An automatic stay applies only to property that belongs to the debtor. In re Majestic Star Casino, LLC, 716 F.3d 736, 750 (3d Cir. Del. 2013). The FTB therefore did not violate the automatic stay by refusing to release the Order to Withhold.

**1. The Effect of the Order to Withhold**

The dispositive issue in this case is whether Freeman had any ownership over or interest in the Available Funds when she filed her bankruptcy petition, such that the Funds became part of her bankruptcy estate. Judge Lafferty held that the Order to Withhold had already transferred ownership of the Funds to the FTB, and de novo review supports his assessment.

**a. The Ordinary Meaning of Section 18670(a)**

The ordinary meaning of California Revenue and Taxation Code Section 18670(a) indicates that ownership of the Available Funds transferred to the FTB the moment

Freeman's bank received the Order to Withhold.

"Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." In re Majestic Star Casino, LLC, 716 F.3d at 751 (citing to Butner v. United States, 440 U.S. 48, 54 (1979); see also In re Caldwell, 111 B.R. 836, 837 (Bankr. C.D. Cal. 1990) (finding that in order to determine the nature of a debtor's legal and equitable interest, courts must look to non-bankruptcy law). Moreover, when interpreting state law, federal courts must rely on the state's rules of statutory interpretation, and determine what meaning the state's highest court would give the statute. GreenCycle Paint, Inc. v. PaintCare, Inc., 250 F. Supp. 3d 438, 453 (N.D. Cal. 2017). In California, courts interpret statutes by examining their plain language, giving words their usual and ordinary meaning. DuBois v. Workers' Comp. Appeals Bd. 5 Cal. 4th 382, 387–88 (1993) (citing Moyer v. Workmen's Comp. Appeals Bd., 10 Cal.3d 222, 230 (1973)).

California Revenue and Taxation Code Section 18670(a) provides in part that "in the case of a depository institution . . . amounts due from a taxpayer under this part shall be transmitted to the Franchise Tax Board not less than 10 business days from receipt of the notice." Cal. Rev. & Tax. Code § 18670(a). The FTB's position is that a bank's receipt of an order to withhold immediately transfers ownership of the funds to the FTB, even before the 10-day period lapses. Appellee's Brief (dkt. 11) at 20. The FTB interprets the 10-day processing period in Section 18670(a) as simply administrative, allowing the bank to gather the funds and remit them to the state, without providing any leeway for the taxpayer. See id. at 18–19.

Freeman responds that an order to withhold does not take effect until the 10-day period has lapsed and the bank has completed transferring the funds to the FTB. Appellant's Opening Brief (dkt. 8) at 2,10. She considers the Order to Withhold in this case to be "incomplete." Id. at 8–10. Freeman bolsters her point by comparing Section 18670(a) with Section 6703(a). Id. at 10. Section 6703(a) states that the "notice of levy shall have the same effect as a levy pursuant to a writ of execution." Cal. Rev. & Tax. Code § 6703(a). Freeman contends that because Section 6703(a) explicitly extinguishes

7

the debtor's interest in the funds, and Section 18670(a) does not, the Order to Withhold that her bank received pursuant to Section 18670(a) did not immediately terminate her interest. See Appellant's Opening Brief at 10–11. Accordingly, she asserts, because fewer than 10 days had elapsed, and no transfer had taken place, the Funds were still her property when she filed for bankruptcy. Id. at 15.

But Freeman's comparison to Section 6703(a) is unpersuasive given the plain language of the Section 18670(a). The plain language of Section 18670(a) states that, upon receipt of an Order to Withhold, the Freemans' bank was "require[d]" to and "shall . . . transmit[]" the Available Funds to the FTB. See Cal. Rev. & Tax. Code § 18670(a). That language is mandatory and binding, as it commands the Bank to transfer the Funds to the FTB. The Section contains no language indicating that the taxpayer or Bank can contest these commands.

Freeman's Section 6703 comparison is also inconsistent with the Supreme Court's analysis of orders to withhold. The Supreme Court found that orders to withhold are "in operation and effect . . . identical to the judgment of a court." Franchise Tax Board of California v. United States Postal Service, 467 U.S. 512, 523 (1984). Although that case did not involve a taxpayer attempting to thwart an order to withhold by filing for bankruptcy within the 10-day period provided in Section 18670(a), it is nonetheless instructive. The Court explained that orders to withhold "give rise to a binding legal obligation to pay the assessed amounts; the taxpayer may no more dispute this liability than the liability under any other judgment." Id. And it observed that neither a bank receiving an order to withhold nor a taxpayer subject to an order to withhold can dispute liability under the order until after the tax has been paid—at which point the bank or taxpayer can only request a refund. Id. at 522, 523.

Thus, while Postal Service did not address the effect of what Freeman calls an "incomplete" Order to Withhold, it did recognize that all orders to withhold are mandatory, binding, and contestable only after the fact. Because a taxpayer has no opportunity to challenge such an order within the 10-day period, it is consistent with the Supreme Court's

reading of Section 18670(a), and the plain meaning of the Section, for this Court to conclude that transfer of ownership is immediate. That Section 18670(a) does not contain the exact same wording as Section 6703(a) does not dictate otherwise.[1]

### b. The Context of Section 18670(a)

Moving beyond the text of Section 18670(a), the California Revenue and Taxation Code as a whole and other authority support the interpretation of Section 18670(a) as immediately transferring ownership to the FTB, even before the 10-day period lapses.

#### i. Other Tax Sections

Four sections of the California Revenue and Taxation Code are especially instructive.

First, California Revenue and Taxation Code Section 18674(a) states that, upon receipt of an Order to Withhold, a bank "shall" comply with the Order "without resort to any legal or equitable action in a court of law or equity." Cal. Rev. & Tax. Code § 18674(a). The word "shall" again communicates a binding requirement: a bank must comply without litigating or contesting the order. This supports the notion that the 10-day processing period referenced in Section 18670(a) is simply intended to provide the bank with the time necessary to gather the funds. See Cal. Rev. & Tax. Code § 18670(a). The Court therefore rejects Freeman's argument that the Order to Withhold was not finalized until the 10-day processing period had lapsed. Appellant's Opening Brief at 2, 8, 10–12, 13, 15.

---

[1] Freeman also contends that the Available Funds remained her property not only because the statute did not immediately transfer the funds to the FTB, but also because the Funds physically remained in her bank account at the time of her bankruptcy filing on January 6, 2017. Appellant's Opening Brief at 9–10. This point is just another variation on who owned the funds, rather than a separate argument. As a threshold matter, money is fungible and is not physically stored in any one person's bank account. That may be the very reason why Section 18670(a) gives banks 10 days to collect what can be large sums of funds. Moreover, bankruptcy courts have found that the location of contested property is not determinative of ownership. Funds may not be the property of the debtor even if they do remain held by the debtor's bank. See, e.g., Illinois Dep't of Revenue v. Valentino's Restoration & Clearly Serv., 215 B.R. 153 (Bankr. N.D. Ill. 1997) (finding that contested funds held by a bank were not owned by a debtor even if the bank was physically holding those funds until it had completed transfer).

Second, California Revenue and Taxation Code Section 18672 states that failure to comply with an order to withhold renders the bank in question liable for the amount it should have withheld and paid to the FTB. Cal. Rev. & Tax. Code § 18672. To Judge Lafferty, this was an important point. "If somehow the money is not paid," he explained, "it becomes a personal liability for the party who is directed to pay it who doesn't otherwise owe the debt. This is a powerful statement that it is essentially [game] over in terms of the debtor's interest." Tr. of S.J. Hearing, Appellant's ER at 149. Thus, after a bank receives an order to withhold, it is liable to the FTB for any losses—suggesting that ownership really lies with the FTB.

Third, like the bank in question, the debtor in question also may not contest the transfer of Available Funds to the FTB. California Revenue and Taxation Code Section 19381 states that "no . . . legal or equitable process shall issue in any suit, action, or proceeding in any court against this state or against the officer of this state to prevent or enjoin the . . . collection of any tax under this part . . . ." Such sweeping language grants the FTB broad protection from challenges to their tax-collecting powers. See also Postal Service, 467 U.S. at 523 (analogizing an order to withhold to a judgment of a court). The Freemans could not "resort to any legal or equitable action in a court of law or equity" to dispute the Order to Withhold, which arguably includes the action of filing for Chapter 13 bankruptcy. See Cal. Rev. & Tax. Code § 18674(a). Thus, an order to withhold is binding on both the bank and debtor. See Kanarek v. Davidson, 85 Cal. App. 3d 341, 345–46 (1978) (determining that compliance with an order to withhold is required despite conflicting claims to funds).

Fourth, and relatedly, because a taxpayer cannot prevent the FTB's collection under an order to withhold, the sole remedy envisioned in the California Tax Code is the ability to seek a refund after the FTB has already obtained the Funds. See Cal. Rev. & Tax. Code § 19382 (stating that "any taxpayer claiming that the tax computed and assessed is void in whole or in part may bring an action, upon the grounds set forth in that claim for refund, against the [FTB] for the recovery of the whole or any part of the amount paid."). See also

10

Postal Service, 467 U.S. at 512, 513 (explaining that liability under an order to withhold cannot be contested until after the tax has been paid and a refund action brought.).

Because of the final and uncontestable nature of the Order to Withhold, neither the Bank nor Freeman had any right to challenge the Order to Withhold once it was issued, even before the 10-day processing period had lapsed. Judge Lafferty emphasized this point: "The debtor really lacks any real-world functional ability to make any use of these funds and they were effectively the FTB's money at that point." Tr. of S.J. Hearing, Appellant's ER at 149–51. The California Revenue and Taxation Code as a whole indicates that the Available Funds became the property of the FTB as soon as the Order to Withhold was received by the Bank, by January 5, 2017, the day before Freeman filed for Chapter 13 bankruptcy.

### ii. Beyond the Tax Code

Even beyond the California Revenue and Taxation Code, the California Constitution prohibits any legal or equitable process that would prevent or enjoin tax collection. See Cal. Const. art. XIII, § 32. Courts in this state have repeatedly emphasized the importance of the state's taxing power. See, e.g., Greene v. Franchise Tax Bd., 27 Cal. App. 3d 38, 42 (1972) (citing Watchtower B. & T. Soc. v. County of L.A., 30 Cal.2d 426, 429 (1947)) ("The power to levy and collect taxes is a vital, essential attribute of government without which it could not function."). And the California Supreme Court has held that "a statute will not be construed to impair or limit the sovereign power of the state to act in its governmental capacity and perform its governmental functions on behalf of the public in general, unless such intent clearly appears." People v. Centr-O-Mart, 34 Cal.2d 702, 703–04 (Cal. 1950). Adopting Freeman's reading would "limit the sovereign power of the state to act in its governmental capacity and perform its governmental functions" without any such clear intent in the text. See id.

Thus, the ordinary meaning as well as the broader context of Section 18670(a) indicate that ownership of the Available Funds transferred to the FTB the moment the Bank received the Order to Withhold, which was January 5, 2017 at the latest.

### 2. The Funds Did Not Become Part of the Bankruptcy Estate

Only assets in which a debtor has a legal or equitable interest as of the commencement of his or her bankruptcy case become property within the debtor's bankruptcy estate. 11 U.S.C. § 541(a)(1). Of course, "the [debtor's] estate may take no greater interest than that held by the debtor." In re Farmers Mkts., Inc., 792 F.2d 1400, 1403 (9th Cir. 1986). And a debtor has no legal or equitable interest in an asset that is not the debtor's property or over which the debtor has no control. In re Majestic Star Casino, LLC, 716 F.3d at 750.

Here, any property that Freeman owned at the time of her filing on January 6, 2017 would have become part of her bankruptcy estate. See 11 U.S.C. § 541(a)(1). As explained above, the FTB's Order to Withhold transferred ownership of the funds to the FTB by January 5, 2017. Freeman had no ownership, control, or interest in the Available Funds when she filed her bankruptcy petition on January 6, 2017. The Funds therefore did not become part of her bankruptcy estate.

### 3. Because the Funds Were Not Part of the Bankruptcy Estate, They Were Not Subject to the Automatic Stay

The automatic stay provisions of 11 U.S.C. § 362 protect only the property in which the debtor has a legal or equitable interest. Interstate Commerce Comm'n v. Holmes Transp., Inc., 931 F.2d 984, 987 (1st Cir. 1991). Because the Order to Withhold had already transferred ownership of the Funds to the FTB, the Funds were not subject to the automatic stay. Judge Lafferty expanded on this point in his ruling, explaining that "the automatic stay is really just a procedural device. It doesn't create any rights, it doesn't enhance substantively anything the debtor has or doesn't have on the petition date." Tr. of S.J. Hearing, Appellant's ER at 147. The automatic stay cannot "create" a right to freeze assets that Freeman did not have when she filed for bankruptcy. Since she did not have a right to the Funds, the automatic stay does not apply to or "enhance" her legal or equitable interest in those Funds.

Because the funds were not subject to the automatic stay, no stay violation

occurred. A stay cannot be violated when the debtor does not have an interest in or ownership over the property in question. See, e.g., In re Caldwell, 111 B.R. 836, 837 (Bankr. C.D. Cal. 1999) (finding that "section 362 [of 11 U.S.C.] has no application to property that debtors ceased to have an interest in prior to the filing of the bankruptcy petition."). For example, in In re Perl, the Ninth Circuit determined that because the debtor in question no longer had a legal interest in the contested property when she filed for bankruptcy, she could not successfully claim that the opposing party violated the automatic stay triggered by her filing for Chapter 13. 811 F.3d at 1130. See also In re Hernandez, 483 B.R. 713, 720 (B.A.P. 9th Cir. 2012) (finding no stay violation when the disputed funds had already been rightfully transferred from the debtor into someone else's possession, thereby terminating the debtor's interest in the funds).

Similar to the property that had already been transferred away from the Perl appellant's ownership, interest in the Available Funds had already been transferred from Freeman to the FTB. The automatic stay does not apply to property in which Freeman has no interest, and it does not "create" a new right to such property, as Judge Lafferty noted. As a result, the FTB did not violate the automatic stay provisions by refusing to release the Order to Withhold.

**B.     There was No Legitimate Bankruptcy Purpose**

A second, independent reason the Court affirms the Bankruptcy Court is that when a debtor files for bankruptcy, her purpose must be legitimate, valid, and honest. In Re Liberate Technologies, 314 B.R. 206, 211 (Bankr. N.D. Cal. 2004) (explaining that because the bankruptcy process provides "strong weapons, not generally available outside of bankruptcy . . . [t]o prevent abuse . . . courts have implied the requirement that the petition be filed in good faith."). The purposes of bankruptcy are generally to (1) enable a "fresh start" for the debtor, and (2) ensure equity among creditors. See, e.g., National Consumer Law Center, Consumer Bankruptcy Law and Practice (11th ed.), 2.3 "Purposes of Bankruptcy," www.nclc.org/library (last visited May 29, 2019). Courts have repeatedly emphasized the "fresh start" concept. The Supreme Court described bankruptcy as a

process that "gives the honest but unfortunate debtor a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934). The Ninth Circuit recognizes the "fresh start" concept as one of the legitimate purposes of bankruptcy law. See, e.g., In re Dumont, 581 F.3d 1104, 1111 (9th Cir. 2009); In re Majewski, 310 F.3d 653, 658 (9th Cir. 2002).

Courts do not recognize as legitimate those bankruptcies in which the principal purpose of the debtor's effort is to avoid paying taxes. See 11 U.S.C. § 1129(d) (stating that a court "may not confirm a plan if the principal purpose of the plan is the avoidance of taxes . . . ."). This suggests that a court cannot entertain a bankruptcy case in which the debtor's primary aim appears to be circumventing the payment of legitimately owed taxes.

Freeman admits that she filed for bankruptcy in order to access the Available Funds for personal use, which would prevent the money from being used to pay the FTB taxes, penalties, and interest that she owes. Freeman Decl. ¶ 11, Appellant's Excerpts of Record at 32–37. Although Freeman may legitimately need money for the purposes she describes—namely, mortgage payments and childcare—she did not contest the FTB's revised tax assessment at the outset, seek a hardship hearing as the interest penalty began to increase, or propose a comprise with the FTB that would have allowed her to pay in installments. Indeed, Freeman had "a lengthy period of time to have a dialogue with the FTB about other alternatives." See Tr. of S.J. Hearing, Appellant's ER at 151. Bankruptcy is not an alternative to paying taxes. See, e.g., 11 U.S.C. § 1129(d). Without an explanation from Freeman beyond tax avoidance, it seems that Freeman's bankruptcy case was not motivated by a legitimate bankruptcy purpose.

Without a legitimate bankruptcy purpose, there can be no violation of the automatic stay because there is no valid underlying bankruptcy case to trigger the automatic stay provisions. For example, in In re Spaulding Composites Co., a Bankruptcy Appellate Panel (BAP) for the Ninth Circuit determined that an automatic stay violation is dependent upon there being a proper bankruptcy purpose in the first place. 207 B.R. 899, 908 (B.A.P

9th Cir. 1997). The BAP found that it was an illegitimate use of the bankruptcy process to capture within the debtor's estate property owned by people or entities other than the debtor. Id. at 906–08. Because there was no legitimate bankruptcy purpose with respect to the property in question, the automatic stay did not apply to that property. And because the stay did not apply, no automatic stay violation occurred. Id. at 908.

Here, Judge Lafferty expressed concern that Freeman's bankruptcy filing had no proper bankruptcy aim. "The debtor's actions," he concluded, "were just so consistently inconsistent with the purposes of the Bankruptcy Code . . . ." Tr. of S.J. Hearing, Appellant's ER at 155. Judge Lafferty gave several examples. First, Freeman's bankruptcy case lasted only one month. Id. at 152. The case was dismissed on February 6, 2017 due to Freeman's failure to comply with the "most basic" obligations of a debtor, including her failure to file the required schedules and a statement of financial affairs. Id. at 152–53; Appellee's ER at 65. This lack of compliance is comparable to Freemans' income tax underreporting, which led to the FTB's revised income tax assessment at the genesis of this case. Tr. of S.J. Hearing, Appellant's ER at 155. Second, Freeman said that if the Order to Withhold was withdrawn, she would give the money to her husband so that he could pay his company's subcontractors. Id. at 154. Judge Lafferty observed that this would be "totally inconsistent with the requirements of Chapter 13 bankruptcies," in which the priority is the repayment of creditors. Id. Third, obtaining release of the Order to Withhold was the only purpose of Freeman's bankruptcy case; Judge Lafferty determined that Freeman's "whole goal" in filing for bankruptcy was to prevent the FTB from obtaining the Funds. Id. at 154–55. Yet the automatic stay is supposed to be "just a tool . . . not a goal in itself." Id. at 155. Because of Freeman's actions and intentions, Judge Lafferty found that "there is simply no bankruptcy purpose that has been served or is going to be served by this." Id. at 153.

In response to concerns about her approach to the bankruptcy process, Freeman claims that the FTB's refusal to release the hold on her bank account leaves her "without the funds necessary to 'reorganize' in the Chapter 13 bankruptcy." Appellant's Reply

15

Brief (dkt. 13) at 8. She claims to have "found no reason" to file the required bankruptcy schedules and forms, even though she acknowledges that this "result[ed] in the dismissal of [her] [C]hapter 13 case." Id. at 8–9.

Freeman's response is insufficient. Adherence to the requirements of the bankruptcy process is not optional or contingent on the actions of the other party. Because Freeman has not adhered to the requirements of the bankruptcy process, and because her bankruptcy filing was initiated for an illegitimate purpose, the Bankruptcy Court rightly ruled in favor of the FTB on summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the Bankruptcy Court's decision granting summary judgment in favor of the FTB. The Available Funds were not part of Freeman's bankruptcy estate, so no automatic stay violation occurred. Even assuming that the funds were part of Freeman's estate, there was no legitimate bankruptcy purpose to trigger the automatic stay.

**IT IS SO ORDERED.**

Dated: July 29, 2019

CHARLES R. BREYER
United States District Judge